IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Theresa A Shean,                             Case No. 3:17 CV 748

                Plaintiff,      MEMORANDUM OPINION
                              AND ORDER

    -vs-
                                     JUDGE JACK ZOUHARY

Todd Corbin,

                Defendant.

## INTRODUCTION

Plaintiff Theresa Shean claims Defendant Todd Corbin assigned her to new duties at work as retaliation against her protected speech in violation of the First Amendment. She also claims that her termination based upon her inability to perform these duties with or without reasonable accommodation (due to a hip surgery) was a violation of Ohio law and the Americans with Disabilities Act (ADA). Corbin requested leave to move for summary judgment (Doc. 18), which was converted to a Motion for Summary Judgment (Doc. 22). Shean opposed (Doc. 21), and both sides filed supplemental briefs (Docs. 24–25).

## BACKGROUND

The following facts are undisputed. Shean, a thirty-three-year veteran of the Huron County Sheriff's Office, supported incumbent Dane Howard in his November 2016 bid for re-election as Sheriff. To this end, she wrote an endorsement of his candidacy, published in the Norwalk Reflector. She signed the endorsement as Lt. Shean of the Huron County Sheriff's Office (Doc 21-1 at 2).

At the time of the election, Shean held the position of Road Patrol Lieutenant, sometimes also referred to as Road Patrol Supervisor in the briefing. Her responsibilities were administrative and included oversight of training, dispatch, and road patrol. Following Howard's defeat and Corbin's election as Sheriff, Corbin assigned Shean to conduct road patrol, which would routinely place her in the field and at risk of physical altercations with suspects. Shean had not performed road patrol in thirty years, and following her June 2016 hip replacement surgery, her doctor advised that she could not be put at risk for physical altercations. Given the nature of road patrol, the parties agree Shean would be unable to perform these duties with or without accommodation (Doc 21 at 3). In January 2017, Shean was placed on administrative leave, and she was involuntarily terminated the following month (Doc 19-1 at 3-4).

## STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine dispute as to any material fact," such that the moving party "is entitled to judgment as a matter of law." Federal Civil Rule 56(a). This Court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This Court does not weigh the evidence or determine the truth of any matter in dispute; rather, it evaluates only whether the record contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

## DISCUSSION

**First Amendment Claim**

To establish a *prima facie* case of First Amendment retaliation, Shean must demonstrate that (1) she engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against her that would deter a person of ordinary firmness; and (3) there is a causal connection

2

between elements one and two -- that the adverse action was motivated at least in part by her protected conduct. *Scarbrough v. Morgan*, 470 F.3d 250, 255 (6th Cir. 2006). Shean's speech is constitutionally protected if she spoke as a citizen on a matter of public concern, rather than as an employee on a matter of personal concern. *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006); *Connick v. Myers*, 461 U.S. 138, 147 (1983).

For First Amendment purposes, courts tend to classify individuals as private citizens rather than public employees so long as their speech was outside the ordinary scope of their official duties. *Naghtin v. Montague Fire Dist. Bd.*, 674 F. App'x 475, 479 (6th Cir. 2016). The impetus, setting, audience, and subject matter of the speech are all relevant factors. *Stinebaugh v. City of Wapakoneta*, 630 F. App'x 522, 523 (6th Cir. 2015). "Speech made to a public audience, outside the workplace, and involving content largely unrelated to government employment indicates that the employee speaks as a citizen, not as an employee, and speaks on a matter of public concern." *Scarbrough*, 470 F.3d at 256. Using the fact of one's public employment as political leverage weighs against plaintiffs bringing First Amendment claims. *Cf. Stinebaugh*, 630 F. App'x at 523 ("Stinebaugh spoke to three council members to give them a citizen taxpayer's perspective on the fire department's plan to expend public money on a new rescue truck."); *Westmoreland v. Sutherland*, 662 F.3d 714, 719 (6th Cir. 2011) ("Although plaintiff identified himself as a public employee, he appeared off duty, out of uniform, and at a public meeting to address the Mayor and City Council during the public comment period.").

As for whether the speech discusses a matter of public concern, a government employee has the right to speak on matters of "legitimate public concern" where "free and open debate is vital to informed decision-making by the electorate." *Naghtin* at 478. Whether speech or conduct touches upon a matter of public concern depends on content, form, and context. *Id* at 479. Courts generally

3

avoid constitutionalizing the employee grievance, and thus allegations of managerial incompetence are not constitutionally protected. *Connick*, 461 U.S. at 154; *Barnes v. McDowell*, 848 F.2d 725, 735 (6th Cir. 1988). Further, the Sixth Circuit made clear that a veneer of public interest cannot serve as cover for the self-interest of a public employee, and speech is not protected when "the employee's personal interest *qua* employee predominates over any interest he might have as a member of the general public." *Brown v. City of Trenton*, 867 F.2d 318, 322 (6th Cir. 1989). *See also Naghtin* at 480, 481 ("[W]e hold that his alleged altruism is insufficient to transform his petition into constitutionally protected speech. Naghtin was a member of the unit previously commanded by Donald Roesler, and he stood to benefit from his reinstatement").

Shean's speech took place in a public forum outside the office. But she signed her endorsement in her capacity as a Sheriff's department lieutenant, without any of the qualifying language that courts have found significant in distinguishing between a government employee's public and private personas. Shean's newspaper endorsement was largely a paean of Howard's character, and her primary argument focused on staffing issues within the office. She wrote that "when performance expectations are not met, strategic decisions may often result in staff assignment changes. We have a sheriff who can make these tough decisions, though painful and severely challenging. To change this leadership quality would be debilitating to the service capabilities of this office" (Doc 21-1 at 2).

Despite her passing reference to "service capabilities," Shean's letter primarily focuses on issues directly related to her government employment -- *i.e.*, staff assignments. This, coupled with the fact that she signed the endorsement as an employee of the Sheriff's office, reflects that she was not speaking as a private citizen on a matter of public concern. This Court therefore concludes that

her speech was not constitutionally protected, and Corbin is entitled to summary judgment on the First Amendment claim.

A final note: the parties devoted much of their briefing to the impact of Ohio's Little Hatch Act, Ohio Rev. Code § 124.57(A), which may restrict the ability of public employees to offer political endorsements like this one. *See State ex rel. Northern Ohio Patrolmen's Benev. Ass'n. v. Wayne Cty. Sherriff's Dept.,* 27 Ohio App. 3d 175, 177 (Ohio Ct. App. 1986). But because this Court finds Shean's speech was not entitled to constitutional protection, it declines to reach this issue.

**ADA Claim**

Employers must make "reasonable accommodations to the known . . . limitations of an otherwise qualified individual with a disability," so long as the accommodation does not cause "undue hardship." *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 761 (6th Cir. 2015) (quoting 42 U.S.C. § 12112(b)(5). An employee is "qualified" if she can perform the "essential functions" of the position with or without reasonable accommodation. 42 U.S.C. § 12111(8). Eliminating an essential function of the position does not constitute a reasonable accommodation, but "job restructuring" could be an appropriate accommodation. *Ford Motor Co.*, 782 F.3d at 761. In this case, the parties agree that no accommodation would allow Shean to go on road patrol (Doc 21 at 3-4), but the question remains whether road patrol was an "essential function" of her job.

The employer's judgment, personnel constraints, written job descriptions, the amount of time spent on the job performing the function, the consequences of not requiring an employee to perform the function, and the work experience of past or current employees with similar or the same jobs are all relevant to whether or not a given function is essential. 29 C.F.R. § 1630.2. Thus, while potentially quite useful, "[w]ritten job descriptions are . . . not dispositive." *Rorrer v. City of Stow*, 743 F.3d 1025, 1039 (6th Cir. 2014). *See also Skerski v. Time Warner Cable Co.*, 257 F.3d 273 (3d

Cir. 2001) (reversing summary judgment where deposition testimony reflected a dispute over the essential functions of the position).

The record in this case includes a written job description, but the parties contest whether it is the correct one (*see* Doc. 25 at 5–6). The description at issue is for the position of "Patrol Officer Supervisor," and it provides that patrolling the jurisdiction in response to emergency calls and citizen complaints will constitute 10 percent of the employee's job duties (Doc. 17-1). The written description does not indicate whether it applies equally to employees of different ranks, and Shean contends this is the description for a sergeant, rather than a lieutenant. Nevertheless, it is undisputed that Corbin -- perhaps for reasons related to efficient personnel management (Doc. 24-1 at 17) -- required Shean to perform road patrol following the 2016 election.

In the Seventh Circuit, a district court granted summary judgment for the defendant on a similar fact pattern, and was reversed on appeal. *Shell v. Smith,* 789 F.3d 715, 716 (7th Cir. 2015). In *Shell*, the job description for a "Mechanic's Helper" provided that the employee "may occasionally drive buses to field locations." *Id.* But the plaintiff held that position for twelve years without a commercial driver's license (CDL) and without driving a bus. On appeal, the Seventh Circuit held that the record contained sufficient evidence from which a reasonable jury could conclude that driving a bus was not an essential function of the job. *Shell*, 789 F.3d at 716. The Seventh Circuit has previously been cited with approval by the Sixth Circuit on related employment law issues. *See, e.g., Burns v. Coca-Cola Enters., Inc.*, 222 F.3d 247, 257 (6th Cir. 2000) ("We agree with the Seventh Circuit that an employer has a duty under the ADA to consider transferring a disabled employee who can no longer perform his old job even with accommodation to a new position within the Company for which that employee is otherwise qualified.").

Because there is a genuine dispute as to whether road patrol was an essential function of Shean's position, this determination should be left to a jury.

## **CONCLUSION**

Defendant's Motion for Summary Judgment is granted with respect to Plaintiff's First Amendment Claim, and denied with respect to Plaintiff's ADA claim (Doc. 18).

IT IS SO ORDERED.

      s/ *Jack Zouhary*
    JACK ZOUHARY
    U. S. DISTRICT JUDGE

June 29, 2018